IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DENNIS WIERTELLA, as Administrator of the Estate of Randy Wiertella, Deceased, and Father of Randy Wiertella,<br><br>Plaintiff,<br><br>v.<br><br>LAKE COUNTY, OH, et al.,,<br><br>Defendants. | CASE NO. 1:20-cv-02739-BMB<br><br>JUDGE BRIDGET MEEHAN BRENNAN<br><br>**MOTION FOR SUMMARY JUDGMENT BY DEFENDANT KARIM RAZMJOUEI, M.D.** |

## MOTION FOR SUMMARY JUDGMENT

Defendant Karim Razmjouei, M.D. ("Dr. Razmjouei") moves for summary judgment on the grounds that he is entitled to immunity from Plaintiff's § 1983 claims under the doctrine of qualified immunity. Plaintiff's only alleged claim against Dr. Razmjouei is a claim for "deliberate indifference" under 42 U.S.C. § 1983. The record, however, confirms that Dr. Razmjouei's role as the part-time Medical Director at the Lake County Adult Detention Center was a limited one and that there is no evidence that he was aware of—much less acted with deliberate indifference towards—any alleged serious medical needs of decedent Randy Wiertella. Therefore, because Plaintiff cannot establish a claim for deliberate indifference against Dr. Razmjouei as a matter of law, the Court should enter judgment as a matter of law in Dr. Razmjouei's favor and dismiss him from this action.

A Brief in Support of this Motion is attached below.

Respectfully submitted,


/s/ David A. Bernstein
Edward E. Taber (0066707)
David A. Bernstein (0093955)
Tucker Ellis LLP
950 Main Avenue, suite 1100
Cleveland, OH 44113
Tel: 216.592.5000
Fax: 216.592.5009
Email: edward.taber@tuckerellis.com
david.bernstein@tuckerellis.com

*Attorneys for Defendant Karim Razmjouei, M.D.*

**BRIEF IN SUPPORT**

I.     **INTRODUCTION**

The standard for establishing a deliberate indifference claim under 42 U.S.C. § 1983—the only claim alleged by Plaintiff against Dr. Karim Razmjouei—is well established. In *Greene v. Crawford Cty., Michigan*, 22 F.4th 593, 605-06 (6th Cir. 2022), the Sixth Circuit clarified that proving a deliberate indifference claim under the Fourteenth Amendment of the United States Constitution requires proof that the defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." Absent evidence sufficient to meet this high mark, a physician who provides healthcare services to inmates at a county jail (like Dr. Razmjouei) is a government official acting under the color of state law for the purposes of § 1983, *Winkler v. Madison Cty.*, 893 F.3d 877, 890 (6th Cir. 2018) (internal citations omitted), and is therefore protected by qualified immunity so long as his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person might have known." *Reilly v. Vadlamudi*, 680 F.3d 617, 622-25 (6th Cir. 2012) (internal citations omitted).

Summary judgment is appropriate as to the only claim alleged by Plaintiff against Dr. Razmjouei because there is no evidence to suggest that he acted with deliberate indifference. The record confirms that Dr. Razmjouei's role as part-time Medical Director at the Lake County Adult Detention Center (the "Jail") is a limited one. As he testified, Dr. Razmjouei works there two days a week addressing requests from nursing to review select patient records, write and/or verify prescriptions, and see sick patients at the request of the Jail's nursing staff and its Medical Coordinator, formerly Diane Snow, who is also a registered nurse. (Dr. Karim Razmjouei Dep. Tr. at 21:11-16, attached as Exhibit A). Dr. Razmjouei does *not* oversee the day-to-day administrative and clerical tasks related to delivering medical care at the Jail, which are overseen by the Medical

Coordinator—at that time, Diane Snow, RN. (Diane Snow, RN, Dep. Tr. at 19:1-15 and 76:1-19, attached as Exhibit B) (explaining Dr. Razmjouei's duties as seeing sick patients that the nursing staff makes him aware of by placing on his sick call list). Primary patient care, which includes clarifying an inmate's prior medical history or requesting an inmate's medical and pharmaceutical records, is the responsibility of the nursing staff—not Dr. Razmjouei. (*See* Christina Watson, LPN Dep. Tr. at 35:25-37:5, attached as Exhibit C; *see also* Snow Dep. at 13:15-16:15, Ex. B).

In short, the record confirms that in his limited role as Medical Director, Dr. Razmjouei would only treat patient-specific issues when they are brought to his attention. And with respect to Randy Wiertella, the record confirms that the only issue brought to Dr. Razmjouei's attention was the need to co-sign the order to refill Mr. Wiertella's diabetes medication – metformin – a task which Dr. Razmjouei timely and appropriately completed at the request of the nursing staff. (*See* Razmjouei Dep. at 165:5-11, Ex. A). On this record, Plaintiff cannot prove the essential components of a deliberate indifference claim—that Dr. Razmjouei ever acted "deliberately (not accidentally)," let alone "recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Greene*, 22 F.4th at 605-06. Because of this, and because he was at all times acting under the color of state law during the events at issue, Dr. Razmjouei is immune from Plaintiff's § 1983 claim under the doctrine of qualified immunity. And because Plaintiff alleges no other claims against Dr. Razmjouei besides deliberate indifference in violation of § 1983, the Court should dismiss Dr. Razmjouei from this litigation (*see* Pl.'s Amended Compl., ECF 7, making allegations towards Dr. Razmjouei in only their First Claim for Relief of their Amended Complaint).[1]

---

[1] Plaintiff's Second Claim for Relief, a *Monell* claim under § 1983, is against only Defendant Lake County; Plaintiff's Third Claim for Relief, for negligence, and Fourth Claim for Relief, for

2

II.     **BACKGROUND**

    A.     **Dr. Razmjouei's Role in the Lake County Jail Is To Treat Patients Which the Nursing Staff First Evaluates and Refers to Him for Treatment.**

Dr. Razmjouei, who holds the title as Medical Director, is the primary physician for the Lake County Adult Correctional Center. But as his own testimony demonstrates, as well as that of the jail nursing staff, Dr. Razmjouei does not manage the administrative functions of the jail medical dispensary. That is the job of the Jail's medical coordinator, who in 2018 was a registered nurse named Diane Snow. (*See* Dr. Razmjouei Dep. Tr. at 36:19-36:25, Ex. A; *see also* Diane Snow Dep. Tr. at 42:16-43:1 and 48:13-50:5, Ex. B; *and see also* Christina Watson, LPN Dep. Tr. at 29:23-30:23 and 35:25-37:5 (describing her day-to-day duties))

As Dr. Razmjouei testified, he only sees patients that the nursing staff (and possibly corrections officers) identify as requiring a physician's attention. (Razmjouei Dep. at 37:12-38:20). This happens through either direct referrals after an inmate sends a request for medical attention to a nurse who elevates the issue to Dr. Razmjouei, or when a nurse leaves a request for Dr. Razmjouei in an inmate's medical record for his review the next time he is in the office. (*Id.*) Dr. Razmjouei also remains available 24/7 via his phone for any medical emergencies that may arise. (*Id.* at 46:20-47:10). When an inmate needs a medication that a physician must prescribe, those requests are first made to the Jail's nursing staff and then elevated for Dr. Razmjouei to either co-sign and prescribe or to request to personally examine the patient before making a prescribing decision. (*See* Watson Dep. 35:25-37:5, Ex. C; *see also* Snow Dep. at 13:15-16:15, Ex. B). But if a nurse does not tell Dr. Razmjouei that an inmate/patient has requested a particular medication,

---

wrongful death, are only made against Defidants Lake County, Dunlap, Brooks, and the "Corrections Defendants" (which do not include Dr. Raz). *See* ECF 7, *passim*.

Dr. Razmjouei has no way of knowing of the inmate's request. (Razmjouei Dep. at 47:11-17, Ex. A). Indeed, both Christina Watson, an LPN working in the Jail in December 2018, and RN Diane Snow, the Medical Coordinator at the time, confirmed that Dr. Razmjouei's role only involves treating those patients *that the nursing staff first refer to him*. (*See* Snow Dep. at 19:1-15 and 76:1-19, Ex. B, *see also* Watson Dep. at 153:3-154:4, Ex. C).

> B. **Mr. Wiertella Received Only Limited Indirect Treatment by Dr. Razmjouei during His Incarceration at the Lake County Jail.**

On December 2, 2018, while traveling on I-90 with three other companions, Randy Wiertella was pulled over for speeding and, upon inspection of his vehicle, was arrested by the Willoughby Hills Police Department for improper handling of firearms and possession of cocaine. (*See* Willoughby Hills Police Dept. Incident Report, attached as Exhibit D) He was subsequently taken to the Lake County Jail, where he was processed and incarcerated. Per the Jail's standard practices and procedures, upon intake, Randy Wiertella participated in a medical screening, the form that is completed by a corrections officer asking questions of inmates. (*See* Lake County 887-889, attached as Exhibit E). Mr. Wiertella's medical screening form was filled out by Sgt. Longbons, a corrections officer of the jail, who subsequently testified that he remembered nothing remarkable about Mr. Wiertella's health but did recall that Wiertella was worried about mixing with other inmates because he believed he had a weakened immune system from his time serving a tour of duty in Iraq. (*See* Sgt. Longbons Dep. Tr. at 63:8-13 and 73:1-74:4, attached as Exhibit F).

After Sgt. Longbons' medical screening of Randy Wiertella, a member of the nursing staff (doing rounds collecting any documentation from various parts of the jail) or a corrections officer would have taken the medical screening form to the jail's nursing staff for review to determine if there are any issues which require attention. (*See* Watson Dep. at 60:6-20, Ex. C). LPN Christina

4

Watson reviewed Randy Wiertella's medical screening form. (*See* Watson Dep. at 119:11-13, Ex. B). Per LPN Watson, it was her duty to review whether the inmate had any medical concerns or medication issues that needed to be addressed. (*Id*. at 36:7-37:16 and 93:2-95:16). As Ms. Watson explained, the nursing staff had the ability to then discuss any issues on the medical screening form with inmates to confirm health care concerns or any medication needs. After that, the nursing staff could put in an order for Dr. Razmjouei to co-sign on any prescriptions that needed filled and could not be brought in by the inmate (upon arrest) or his family at a later time. (*Id*.)  In this specific case, upon reviewing Randy Wiertella's medical screening form, Ms. Watson identified that he had indicated he was diabetic and prescribed metformin. (*See* Watson Dep. at 104:11-17, Ex. C). On December 3, 2018, following up on Mr. Wiertella's indicated diabetes problems, she then issued a request for Dr. Razmjouei to counter-sign an order to refill Mr. Wiertella's metformin (diabetes) medication, a diabetic diet, and nightly blood glucose checks. (Randy Wiertella's Progress Notes, Lake County 000959, attached as Exhibit G; *see also* Watson Dep. at 132:3-132:12; *and* Razmjouei Dep. at 165:5-11, Ex. A). Ms. Watson testified that following her review of Mr. Wiertella's medical screening form, she never asked Dr. Razmjouei to review that form nor for his consultation regarding any issues on that form. (Watson Dep. at 153:16-20, Ex. C).

On December 4, 2018, the following day, per his standard practice, Dr. Razmjouei began work by reviewing any outstanding requests from the nursing staff for any medical orders or prescription fills. Noting that LPN Watson had identified Mr. Wiertella as diabetic and requesting a continuation of his medication for metformin 1000 mg bid, Dr. Razmjouei counter-signed the order to refill Mr. Wiertella's prescription for metformin, a diabetic diet, and blood glucose checks. (*See* Randy Wiertella Progress Note, Lake County 000959, Ex. G.; *see also* Razmjouei Dep. at 53:16-25, Ex. A). As Dr. Razmjouei testified, he would only review an inmate's medical screening

5

form if asked by his nursing staff to do so, and in this case he was never asked to do so. (Razmjouei Dep. at 53:10-15, Ex. A; *see also* Watson Dep. at 153:16-20, Ex. C).

It is thus undisputed fact that Dr. Razmjouei **never** met, much less examined, Mr. Wiertella. (Razmjouei Dep. at 18:7-18:14, Ex. A). He was simply never asked to do so. Dr. Razmjouei does not oversee the Jail's nursing staff working alongside him. (Razmjouei Dep., at 24:23-25:10, Ex. A). Rather, his actions in this case, as in line with his limited role in the jail, were limited to simply countersigning the order to refill the metformin and authorizing a diabetic diet and daily glucose checks as LPN Watson requested he do so for Mr. Wiertella. Dr. Razmjouei was otherwise unaware and never informed that Mr. Wiertella may have subsequently sent "kites" to the jail guards requesting other unspecified medications, a fact which LPN Watson herself confirmed. (Watson Dep. at 153:21-154:4, Ex. C). Moreover, apart from Plaintiff's assertion, there is no evidence that Mr. Wiertella ever informed any corrections staff that he wanted a CPAP machine. Dr. Razmjouei was never asked to prescribe any other medications besides metformin, never informed of nor consulted about any other health issues related to Randy Wiertella, and had no other involvement with Randy Wiertella's care at the Jail besides the metformin refill. (Razmjouei Dep at 163:13-165:11, Ex. A; *see also* Watson Dep. at 153:4-154:4, Ex. C). He was never aware or informed that Randy Wiertella had any other health needs other than the need to refill the metformin as brought to his attention by LPN Watson, and had no reason to suspect that further treatment of the inmate was necessary. (*Id.*)

### III. DISCUSSION

#### A. Applicable Legal Standards

##### 1. § 1983 and Qualified Immunity

"To prevail on a cause of action under § 1983, a plaintiff must prove '(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'… **The principle is well settled that private medical professionals who provide healthcare services to inmates at a county jail qualify as government officials acting under the color of state law for the purposes of § 1983**." *Winkler v. Madison Cty.*, 893 F.3d 877, 890 (6th Cir. 2018) (internal citations omitted) (emphasis added).

Individuals who act under the color of state law for purposes of § 1983 are shielded not just from liability, but also *from suit* by the doctrine of qualified immunity. Qualified immunity protects state officials, including prison employees, so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Reilly v. Vadlamudi*, 680 F.3d 617, 622–25 (6th Cir. 2012) (internal citations omitted).

In the instant case, the only alleged Eighth and Fourteenth Amendment constitutional violation is that Dr. Razmjouei was allegedly "deliberately indifferent to Randy Wiertella's serious medical needs." Failing that, Dr. Razmjouei, as a jail-contracted physician acting under the color of state law,[2] is immune from Plaintiff's § 1983 claims and should be dismissed.

---

[2] *See, e.g., Winkler v. Madison Cty.*, 893 F.3d 877, 890 (6th Cir. 2018); *see also Est. of Jensen by Jensen v. Clyde*, 989 F.3d 848, 855–56 (10th Cir.), *cert. denied sub nom. Est. of Jensen By Jensen v. Tubbs*, 142 S. Ct. 339, 211 L. Ed. 2d 180 (2021) (Part time jail doctor entitled to raise qualified immunity defense).

2.     **Deliberate Indifference**

For claims alleging deliberate indifference to the serious medical needs of inmates under the Eighth Amendment, the Sixth Circuit sets forth the following legal standard:

> [D]eliberate indifference entails something more than mere negligence…To make out a valid claim, a plaintiff must satisfy an objective component and a subjective component. [1] The objective component is satisfied by showing a sufficiently serious condition that denial of needed medical care would result in the unnecessary and wanton infliction of pain or pose a substantial risk of serious harm…[2] To satisfy the subjective component, a plaintiff must allege and ultimately prove that the defendant was aware of facts from which the inference could be drawn that a substantial risk of harm would exist if needed care were not provided, that the defendant actually drew the inference, and that the defendant acted in disregard of that risk.

*Amick v. Ohio Dep't of Rehab. & Correction*, 521 F. App'x 354, 357–58 (6th Cir. 2013) (internal citations omitted). Moreover, the "subjective standard requires more than negligence and it approaches intentional wrongdoing… The Supreme Court has compared the deliberate indifference standard to that of criminal recklessness." *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (quoting *Farmer v. Brennan,* 511 U.S. at 837, 114 S.Ct. 1970 (1994)).

Until recently, that analysis was identical for claims of deliberate indifference to the serious medical needs of pretrial detainees under the 14th Amendment. In *Greene v. Crawford Cty., Michigan*, however, the Sixth Circuit altered the burden a plaintiff must prove to establish the subjective component of a deliberate indifference claim:

> *Brawner* modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness: "**A pretrial detainee must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'** " *Brawner*, 14 F.4th at 597 (6th Cir. 2021) (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)). **In other words, a plaintiff must prove that the defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is**

8

> **either known or so obvious that it should be known.**" *Id.* (citation and quotation marks omitted).
>
> …The *Brawner* majority expressly considered and rejected the suggestion that its extension of *Kingsley* was dictum. *Brawner*, 14 F.4th at 592. Although it concluded that the facts "support[ed] a finding of deliberate indifference under either" the Eighth-Amendment subjective standard or *Kingsley*'s modified objective standard, it reasoned that "deciding the issue [was] necessary so the jury can be properly instructed on remand" and that there were "no statutory or alternative grounds on which to decide this case." *Id.* at 592 n.2. We are bound by that decision.

22 F.4th 593, 605–07 (6th Cir. 2022).

Plaintiff has alleged claims of deliberate indifference under both the Eighth and Fourteenth Amendments as Randy Wiertella was both a pretrial detainee and later a convicted inmate at different times during his incarceration at the Jail. For purposes of demonstrating a lack of genuine issue of any material fact, Defendant's motion for summary judgment applies the subjective standard discussed in *Greene* to demonstrate that Plaintiff has no cognizable claims against Dr. Razmjouei under either the Eighth or Fourteenth Amendments. If Plaintiff's claim against Dr. Razmjouei fails the subjective component under the standard established in *Greene*, it necessarily also fails under the higher standard articulated in *Amick*.

### B. Plaintiff has *no* Evidence that Dr. Razmjouei Acted with Reckless Disregard in the Face of an Unjustifiably High Risk of Harm, as Required by *Greene*.

"A defendant's personal liability in a § 1983 action 'must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others.' … Thus, the deliberate indifference standard requires that the plaintiff show that each individual defendant had the necessary mental culpability based on the facts and circumstances known to that officer." *Arrington-Bey v. City of Bedford Heights*, No. 14 CV 2514, 2016 WL 828787, at *13–14 (N.D. Ohio Mar. 3, 2016), *rev'd sub nom. Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988 (6th Cir. 2017). Thus, to succeed in demonstrating that Dr.

9

Razmjouei is *not* entitled to qualified immunity and to prove their deliberate indifference claim, Plaintiff must indicate facts that show Dr. Razmjouei personally deliberately and recklessly disregarded an unjustifiably high health risk.

Plaintiff has no evidence of that. As discussed before, Dr. Razmjouei was only ever made aware of **one** of Mr. Wiertella's many alleged health problems, his diabetes, for which Dr. Razmjouei provided treatment by refilling Mr. Wiertella's prescription for metformin, daily glucose checks and a diabetic diet. *Infra*, § II(B). Beyond that, Dr. Razmjouei's nursing staff never elevated any concerns to him. (Watson Dep. at 153:3-154:4, Ex. C). And Plaintiff has not produced any evidence that Randy Wiertella's diabetes was in any fashion unconstitutionally out of control while he was incarcerated. Rather, Plaintiff's allegations as laid out in the First Amended Complaint (ECF 7) indicate that Plaintiff believes Wiertella's deliberate indifference resulted from the fact that he had a series of other health issues such as hypertension, psychological disorders, and sleep apnea that he noted in his medical screening form but were never addressed by any jail staff. (ECF 7 at ¶¶ 14-24). Most importantly for purposes of this Motion, these "other health issues" were never brought to Dr. Razmjouei's attention in any way.

### 1. Plaintiff Has Produced No Evidence Dr. Razmjouei Was or Should Have Been Aware of Plaintiff's Purported Health Issues

Under questioning by Plaintiff's counsel, LPN Watson acknowledged that when reviewing Randy Wiertella's medical screening form, she focused on his complaint of diabetes, which she considered to be the most emergent concern. (*See* Watson Dep. at 127:9-20, Ex. C). While Plaintiff will undoubtedly argue that Ms. Watson *should have* followed up on the other health conditions listed on Wiertella's medical screening form, her alleged failure cannot be imputed to Dr. Razmjouei. As Watson, Dr. Razmjouei, and the medical coordinator, RN Diane Snow, all testified: Dr. Razmjouei does not conduct reviews of these forms and relies on his medical staff to raise any

medical concerns that need addressed to him. (Razmjouei Dep. at 53:10-15, Ex. A; *see also* Watson Dep. at 153:16-20, Ex. C; *see also* Snow Dep. at 76:15-22, Ex. B). Thus, if there was another medical issue mentioned on the form that was never elevated to Dr. Razmjouei's attention, he cannot logically be "disregarding" it (recklessly or benignly). There is no constitutional right or developed case law where an inmate has a right to expect a jail physician to proactively review his medical records once he is detained.

In a more egregious case where a jail physician did actually examine a patient and missed symptoms of heart disease, the Sixth Circuit noted:

> While perhaps in hindsight Jansen *should* have checked Clayton's medical history records, her failure to do so is negligence at most. Jansen noted a number of Clayton's ailments, which did not indicate a heart condition, and made a diagnosis. Because Jansen obviously was not aware that Clayton was at a substantial risk of heart failure, she could not be "deliberately indifferent" to this risk when she made her diagnosis.

*Sanderfer v. Nichols*, 62 F.3d 151, 155 (6th Cir. 1995) (Batchhelder, J.). Similarly, here, because Dr. Razmjouei was **never informed or notified in any manner** of any health concerns besides Randy Wiertella's need to refill the diabetes medication metformin, as proven by the undisputed factual record, Dr Razmjouei cannot be said to have been "disregarding" any of Wiertella's conditions—he simply never knew the problems existed. Because of this, Plaintiff cannot demonstrate that Dr. Razmjouei recklessly disregarded any of Wiertella's alleged serious health concerns, which the record confirms Dr. Razmjouei never knew or should have known existed.

### 2. Plaintiff Has Produced No Evidence that Dr. Razmjouei Contributed Or Failed to Create Necessary Jail Policies that Amounted to Deliberate Indifference.

Much of the focus of Plaintiff's discovery has been over Lake County's "Policies & Procedures" that were in effect in December 2018. *See generally* Lake County Adult Detention Center's Policy and Procedures Manual, at Lake County 000466-591, attached as Ex. H (policies

11

related to medical care). While Plaintiff's complaint only alleges a *Monell* claim against Defendant Lake County, Plaintiff's counsel questioned each member of the nursing staff and Dr. Razmjouei about certain stated policies at the jail, especially those concerning the dispensing of "essential medications." *See* Ex. H, "Policy 254A," at Lake County 000503-505 (regarding "Essential Medications"). Dr. Razmjouei did not dispute that, in general, blood pressure medication is an essential medication listed under the Jail's stated policy. (Razmjouei Dep. at 76:20-25, Ex. A). Thus, the Jail's explicit medical policies are in agreement with Plaintiff's allegations that under ideal circumstances nursing staff would have followed up with Randy Wiertella to determine the nature and prescribing history of his hypertension and psychiatric medications. And these policies, which are reviewed annually by Dr. Razmjouei, cannot be said to be so ineffective as to be unconstitutional.

Rather, viewed in a light most favorable to Plaintiff, the evidence merely suggests that the actions of one nurse may have allegedly varied from those stated policies. But, as discussed above, an individual's liability under 42 U.S.C. § 1983 comes from that individual's own actions. The alleged negligence of a single nurse cannot be said to ever amount to deliberate indifference of the medical needs of a patient *by some other defendant*. *See, e.g., Amick*, 521 F. App'x 354, 357–58 (6th Cir. 2013) ("**deliberate indifference entails something more than mere negligence**…"); *see also Sanderfer v. Nichols*, 62 F.3d 151, 154–55 (6th Cir. 1995) ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition."); *and Greene v. Crawford Cty., Michigan,* 22 F.4th 593, 605–06 (6th Cir. 2022) ("A pretrial detainee must prove something more than negligence…").

But even if there was some degree of negligence by another defendant, the record remains clear that Dr. Razmjouei had no involvement in that purported negligence, nor did he somehow foster an environment amongst the jail nursing staff that caused any alleged negligence. This is

not a case like that of *Greene v. Crawford Cty.*, where the Sixth Circuit recently decided to alter the new subjective component standard. In *Greene*, the plaintiff at issue was suffering severe hallucinations caused by delirium tremors, and the corrections staff failed to get him medical treatment after witnessing such behavior for over 24 hours. 22 F.4th at 608-609. The Court rejected summary judgment in that case because Greene had evidenced such obvious and readily observable medical issues over a 24-hour period it was not reasonable for correctional defendants who witnessed Greene to not seek further medical treatment. *Id*. The Court further noted even if the defendants did not know of Greene's exact condition they had enough notice to be considered to be deliberately disregarding serious medical needs. *Id*. Contrasting that with the instant case, Randy Wiertella never complained about or exhibited any actual symptoms that would have caused the nursing staff immediate concern that would have led them to elevate those concerns to Dr. Razmjouei's attention. Moreover, Dr. Razmjouei, unlike defendants in Greene, never witnessed any of Wiertella's symptoms personally as he never actually met Wiertella since he was not asked to examine this patient, nor did this patient ask to see a doctor.

And, as stated before, Plaintiff has produced no evidence that either Dr. Razmjouei's personal actions or sponsored medical policies contributed to anything resembling a deliberate indifference to the medical needs of Randy Wiertella. In fact, Plaintiff's only expert report, by a forensic pathologist, never even mentions Dr. Razmjouei's name or discusses any actions he would have expected a jail physician to take that were not taken in this case. *See* Expert Report by Dr. Arden, attached as Exhibit I. Thus, Plaintiff does not even have evidence that Dr. Razmjouei's actions violated an ordinary standard of care that would be expected of any physician in a hospital setting, let alone evidence that there was a constitutional violation in a correctional setting with the heightened deliberate indifference standard.

> 3. **Plaintiff's Allegations That Wiertella's Traveling Companions Attempted to Deliver a CPAP Device or Medication Do Not Relate to Anything Dr. Razmjouei Is or Should Have Been Involved In.**

As attested by nurses Snow and Watson, it is the Jail's practices and policies for nursing staff to review and confirm any medications or medical devices delivered to the Jail by an inmate's family or friends to ensure that the medication and prescription is valid and current, and poses no other danger to the Jail or other inmates. (*See* Watson Dep. at 35:25-38:10, Ex. C). Thus, Plaintiff's unsupported allegations that Randy Wiertella's traveling companions, Mr. Spatol and Mr. Anton, attempted to leave additional medications or a CPAP device on December 3, 2018 for Randy Wiertella's use simply do not involve or indicate any liability *of Dr. Razmjouei*. Per RN Snow, a nurse would process the medications to determine whether sufficient information was available to establish that the prescriptions were current and the patient compliant and determine if it was appropriate to dispense the prescription, or whether the issue should be elevated to Dr. Razmjouei. (Snow Dep. at 14:4-15:1, Ex. B) As RN Snow testified, she never saw or medically evaluated Wiertella herself. (Snow Dep. at 88:6-8, Ex. B). As each member of the jail nursing staff has testified, Dr. Razmjouei remained available by phone 24 hours a day, 7 days a week for medical consultation even when he is not on site. (*See* Watson Dep. at 81:1-8, Ex. C; *see also* Snow Dep. at 76:1-10, Ex. B). But as they also testified, Dr. Razmjouei's only involvement in this matter was responding to LPN Watson's request for him to prescribe metformin and a diabetic diet. (*See* Watson Dep. at 153:12-154:4, Ex. C; *see also and* Longbons Dep. at 147:7-147:22, Ex. F).

IV. **CONCLUSION**

It is undisputed that Dr. Razmjouei was acting under the color of state law as the Jail's Medical Director, which means that Plaintiff must overcome the hurdle of qualified immunity for

the only claim against Dr. Razmjouei to proceed. *Winkler v. Madison Cty.*, 893 F.3d 877, 890 (6th Cir. 2018). But the record confirms that Dr. Razmjouei did not act with the deliberate indifference necessary to defeat that immunity. It is undisputed that Dr. Razmjouei's role as Medical Director is a limited one. He never met nor examined Randy Wiertella, because he was not asked to do so. Rather, the Jail's nursing staff handled patient intake, evaluations, and care. A nurse asked Dr. Razmjouei to refill the patient's prescription for metformin, a diabetic diet, and daily glucose checks to treat Randy Wiertella's diabetes, which Dr. Razmjouei promptly did. But no one at the Jail ever informed Dr. Razmjouei that Mr. Wiertella may have any other medical issues, which he could only have learned *through* a request from the nursing staff. Accordingly, Plaintiff's claim of deliberate indifference fails as there is no set of facts that would allow Plaintiff to prove the subjective component of the claim—that Dr. Razmjouei deliberately and recklessly disregarded an unusually high risk in Randy Wiertella.

        Respectfully submitted,

        */s/ David A. Bernstein*
        Edward E. Taber (0066707)
        David A. Bernstein (0093955)
        Tucker Ellis LLP
        950 Main Avenue, suite 1100
        Cleveland, OH 44113
        Tel:    216.592.5000
        Fax:   216.592.5009
        Email:  edward.taber@tuckerellis.com
                  david.bernstein@tuckerellis.com

        *Attorneys for Defendant Karim Razmjouei, M.D.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2022, a copy of the foregoing Motion for Summary Judgment by Defendant Karim Razmjouei was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Respectfully submitted,

*/s/ David A. Bernstein*
Edward E. Taber (0066707)
David A. Bernstein (0093955)
Tucker Ellis LLP
950 Main Avenue, suite 1100
Cleveland, OH 44113
Tel:    216.592.5000
Fax:    216.592.5009
Email:  edward.taber@tuckerellis.com
        david.bernstein@tuckerellis.com

*Attorneys for Defendant Karim Razmjouei, M.D.*